Erica A. Maharg (Bar No. 279396)
Email: eam@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Telephone: (510) 473-8793

Barak Kamelgard (Bar No. 298822)
Email: barak@lawaterkeeper.org
Benjamin Harris (Bar No. 313193)
Email: ben@lawaterkeeper.org
Erina Kwon (Bar No. 235079)
Email: erina@lawaterkeeper.org
LOS ANGELES WATERKEEPER
360 E 2nd Street, Suite 250
Los Angeles, CA 90012
Telephone: (310) 394-6162

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>        Plaintiff,<br><br>        v.<br><br>CAVANAUGH MACHINE WORKS, INC., a California corporation,<br><br>        Defendant. | Case No.: 2:24-cv-06501-PD<br><br>**CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Cavanaugh Machine Works, Inc. ("Defendant") owns and/or operates facilities located at 1540 Santa Fe Ave., Long Beach, CA 90813, under Waste Discharger Identification ("WDID") number 4 19I014325  ("Santa Fe Facility") and 1651 Seabright Ave., Long Beach, CA 90813, under WDID number 4 19I029955 ("Seabright Facility") (each a "Facility" and collectively, the "Facilities");

**WHEREAS,** the Facilities' industrial activities consist primarily of machining and fabricating/welding. Each of the Facilities are categorized under Standard Industrial Classification ("SIC") Code 3599, covering Industrial and Commercial Machinery and Equipment, NEC, and the Seabright Facility is also categorized under SIC Code 3449, covering fabricated metal products;

**WHEREAS,** storm water discharges associated with industrial activity at the Facilities are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit"),[1] and the Federal

---

[1] Any reference to the "General Permit" or "Permit" shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facilities result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on May 17, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice alleging violations of the Clean Water Act and the General Permit at the Facilities;

---

changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

**WHEREAS**, on August 1, 2024, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:24-cv-06501-PD ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Los Angeles River Estuary, San Pedro Bay, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facilities at which the alleged violations are taking place are all located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of

this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facilities.

## II. AGENCY REVIEW AND DEFINITIONS

### A. AGENCY REVIEW OF CONSENT DECREE

8. <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with <u>40 C.F.R. § 135.5</u>. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by <u>40 C.F.R. § 135.5</u>, in order to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.    DEFINITIONS**

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

  a.    "BAT" means the Best Available Technology Economically Achievable.

  b.    "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

  c.    "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

  d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

  e.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

  f.    "Discharge Point" means each discharge location designated in the then-current SWPPPs for the Facilities.

g.      "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.      "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.      "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches at least twenty four (24) hours prior to the rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90813, Westside, Long Beach, CA, USA", available at https://forecast.weather.gov/MapClick.php?lat=33.7902&lon=-118.2269.

j.      "MIP" means a Monitoring Implementation Plan.

k.      "PPT" means Pollution Prevention Team.

l.      "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

m.     "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

n.      "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.      "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.      "SWPPP" means a Storm Water Pollution Prevention Plan.

q.      "Term" means the period between the Effective Date and the "Termination Date."

r.      "Termination Date" means the latest of:

       i.      June 30 following three (3) years from the Effective Date;

      ii.     seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following three (3) years after the Effective Date; or

    iii.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

s.    "Wet Season" means the period beginning October 1st of any given calendar year and ending May 31st of the following calendar year.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.   <u>Non-Storm Water Discharge Prohibition</u>. Any unauthorized non-storm water discharge (as defined in the General Permit), shall be a violation of this Consent Decree unless identified and corrected pursuant to the Action Plan requirements described in Paragraph 24 below.

13.   <u>Current and Additional Best Management Practices</u>.  Defendant shall implement BMPs identified in their SWPPPs and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those necessary to comply with (1) BAT/BCT; and (2) the General Permit's Receiving Water Limitations, which require that discharges from the Facilities "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

14.   <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic rain gauge or sensor at one of the Facilities within thirty (30) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at

least 0.1 inches, and record start/stop times and hourly, non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing at both Facilities for purposes of this Consent Decree, except in the event of equipment malfunctions caused by anything outside of Defendant's control.

15.    Structural and Non-Structural BMPs for the Santa Fe Facility.

a.    Initial Structural and Non-Structural BMPs. As soon as possible but no later than sixty (60) days of the Effective Date, Defendant shall develop and implement the following initial structural and non-structural BMPs at the Santa Fe Facility:

i.    Install a permanent roof covering sufficient to prevent exposure to rainfall for Drainage Area 3 and to eliminate the Discharge Point associated with industrial activities within that drainage area;

ii.    Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas within the Facility, and outside the Facility where pollutants are tracked out from within the Facility, at least once per month outside of the Wet Season, at least twice per month during the Wet Season, and employ hand sweeping and/or vacuuming on the same schedule in areas within the Facility that a mechanical sweeper cannot access;

iii.    Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media), prior to Forecasted Rain Events which have been bench-scale tested at similar

sites to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the Santa Fe Facility, and plan to configure such wattles/filters/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendant shall, thereafter, employ and secure new such wattles/filters/filtration socks in the same manner annually, no later than September 15th;

iv.    During the Wet Season, and as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

v.    Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any wattles/filters/socks deployed at the Facility, and removal of any exposed waste material to the maximum extent practicable;

vi.    Within twenty-four (24) hours prior to a Forecasted Rain Event, cover all debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

vii.    Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire Santa Fe Facility; and

viii.   Institute an equipment and vehicle maintenance program that ensures:

1.    no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Santa Fe Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2.    maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3.    when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

ix.    Within seven (7) days of each of the BMPs in Paragraphs 15.a.i., 15.a.ii., and 15.a.iii. above being implemented the first time, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

b.    <u>Hydrological Evaluation</u>. As soon as possible but no later than sixty (60) days of the Effective Date, Defendant shall submit a written plan to LA Waterkeeper ("Hydrological Evaluation") providing a full assessment of the Santa Fe Facility's topography, curbing elevation, drainage, storm water flow (including surface/sheet flow), and retention capacity to determine optimal implementation of the BMPs in this Paragraph 15.

c. <u>Additional Structural BMPs</u>. As soon as possible but no later than sixty (60) days of the date the Hydrological Evaluation is completed, Defendant shall develop and implement the following additional structural BMPs at the Santa Fe Facility, to the extent necessary based on the Hydrological Evaluation:

    i.   Install, repair, and/or heighten permanent concrete berms, curbs, or similarly effective physical barriers, and/or re-grade the pavement or asphalt as necessary, in order to reduce the number of Discharge Points and/or prevent storm water discharges from any location other than a Discharge Point, to the extent feasible, including without limitation along the perimeter of the Santa Fe Facility and as necessary to ensure storm water does not flow into Drainage Area 3 from Drainage Area 1; and

    ii.   Install gutters along the buildings of the Facility in order to further direct storm water to the applicable Discharge Point, to the extent necessary based upon the results of the Hydrological Evaluation.

    iii.   Within seven (7) days of each of the BMPs in Paragraphs 15.c.i. and 15.c.ii. above being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

16. <u>Structural and Non-Structural BMPs for the Seabright Facility</u>.

a. <u>Initial Non-Structural BMPs</u>. As soon as possible but no later than sixty (60) days of the Effective Date, Defendant shall develop and implement the following initial non-structural BMPs at the Seabright Facility:

i.  Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas within the Facility, and outside the Facility where pollutants are tracked out from within the Facility, at least once per month outside of the Wet Season, at least twice per month during the Wet Season, and employ hand sweeping and/or vacuuming on the same schedule in areas within the Facility that a mechanical sweeper cannot access;

ii.  Employ and secure new wattles/filters/filtration socks (biochar or other equivalent media), prior to Forecasted Rain Events which have been bench-scale tested at similar sites to optimize selection, in order to remove sediments, metals, and organic materials in storm water discharged from the Seabright Facility, and plan to configure such wattles/filters/socks to achieve optimal contact time with storm water prior to discharge, *i.e.,* in multiple layers and/or overlapping formations. Defendant shall, thereafter, employ and secure new such wattles/filters/filtration socks in the same manner annually, no later than September 15th;

iii.  During the Wet Season, and as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

iv. Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any wattles/filters/socks deployed at the Facility, and removal of any exposed waste material to the maximum extent practicable;

v. Within twenty-four (24) hours prior to a Forecasted Rain Event, cover all debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, including without limitation those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

vi. Remove, and prevent the storage of, any inutile, and/or abandoned racks, vehicles, equipment, paint and waste materials from the entire Seabright Facility; and

vii. Institute an equipment and vehicle maintenance program that ensures:

1. no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Seabright Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

2. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

3. when maintenance activities must be performed outdoors, action shall be taken to immediately

contain, capture, and clean up any discharge or spills of waste fluids to the ground.

viii.  Within seven (7) days of the BMP in Paragraph 16.a.ii. above being implemented the first time, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

b.  Hydrological Evaluation. As soon as possible but no later than sixty (60) days of the Effective Date, Defendant shall submit a written plan to LA Waterkeeper ("Hydrological Evaluation") providing a full assessment of the Seabright Facility's topography, curbing elevation, drainage, storm water flow (including surface/sheet flow), and retention capacity to determine optimal implementation of the BMPs in this Paragraph 16.

c.  Additional Structural BMPs. As soon as possible but no later than sixty (60) days of the date the Hydrological Evaluation is completed Defendant shall develop and implement the following additional structural BMPs at the Seabright Facility, to the extent necessary based on the Hydrological Evaluation:

i.  Install, repair, and/or heighten permanent concrete berms, curbs, or similarly effective physical barriers, and/or re-grade the pavement or asphalt as necessary, in order to reduce the number of Discharge Points and prevent storm water discharges from any location other than a Discharge Point 1, including without limitation by plugging the concrete hole in the southwest corner of the Facility, raising the height of the curb in the southwest corner of the Facility sufficient to pond water, and installing a berm or curb running perpendicular to the alley so that water does not

discharge directly to the alley during ponding as needed and necessary based upon the results of the Hydrological Evaluation; and

ii.    If necessary, install a pump system that drains any ponded water in Drainage Area 2 and conveys such water to Drainage Area 1.

iii.    Within seven (7) days of each of the BMPs in Paragraphs 16.c.i. and 16.c.ii. above being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth above.

### B.    SAMPLING AT THE FACILITIES

17.    Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events (two Qualifying Storm Events during the first half of the Reporting Year and two Qualifying Storm Events during the second half of the Reporting Year).   Defendant will use best efforts to capture the first two Qualifying Storm Events in each half of the Reporting Year.  Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.  If Defendant would have been required to collect samples during a rain event pursuant to the General Permit and this Consent Decree had such rain event produced a discharge, but Defendant did not collect samples because such rain event did not produce a discharge, then Defendant shall document the inability to sample by taking representative photographs during the rain event of each Discharge Point from which no discharge occurred. Defendant shall submit such representative photographs to LA Waterkeeper by email, along with rain gauge/sensor data for the date of such rain event, within ten (10) days of a written request for such records by LA Waterkeeper.

18. <u>Sampling Parameters</u>. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant conduct sampling for any additional parameters that are listed in <u>40 C.F.R. § 131.38</u> and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

19. <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

20. <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

21. <u>Reporting</u>. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit and shall provide copies to LA Waterkeeper within ten (10) days of receiving the laboratory report with the results.

C. **REDUCTION OF POLLUTANTS IN DISCHARGES**

22. <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facilities that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[2]**

| Parameter | Numeric Limit | Source of Limit |
|-----------|---------------|-----------------|
| Zinc | 0.26 mg/L | NAL |
| Copper | 0.0332 mg/L | NAL |
| N+N | 0.68 mg/L | NAL |
| Aluminum | 0.75 mg/L | NAL |
| Iron | 1.0 mg/L | NAL |
| COD | 120 mg/L | NAL |
| TSS | 100 mg/L | NAL |
| O&G | 15 mg/L | NAL |
| pH | <6 or >9 S.U. | NAL |

23.     Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any two (2) storm water samples[3] from the applicable Facility exceeds any numeric limit contained in Table 1 during any Reporting Year during the Term.

24.     Action Plan. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12 above, or (b) storm water samples demonstrate an Exceedance as defined above, Defendant shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the applicable Facility and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). However, an Action Plan shall not be required when the BMPs for the applicable unauthorized non-storm water discharge or Exceedance for the same pollutant in the same drainage area were addressed in a previous Action Plan in the

---

[2] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for iron is either increased to 1.1 mg/L or decreased to 0.90 mg/L, such new NAL, and not 1.0 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for iron being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

[3] As examples: (i) samples from both Sample Point 1 and Sample Point 2 exceeding the 1.0 mg/L standard for iron on December 28, 2024; (ii) samples from Sample Point 1 exceeding the 1.0 mg/L standard for iron on December 28, 2024 and on March 15, 2025; or (iii) a sample from Sample Point 1 exceeding the 1.0 mg/L standard for iron on December 28, 2024, and a sample from Sample Point 2 exceeding the 1.0 mg/L standard for iron on March 15, 2025.

same Reporting Year and such BMPs were not yet implemented as of the date of the applicable unauthorized non-storm water discharge or QSE sampling that led to the Exceedance.[4] The complete Action Plan shall be submitted to LA Waterkeeper within sixty (60) days of (a) the applicable unauthorized non-storm water discharge or (b) the receipt of the laboratory report demonstrating the Exceedance, as applicable. If an Action Plan is required for both Facilities, Defendant may submit one Action Plan that addresses both Facilities.

        a.    <u>Action Plan Requirements</u>. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each pollutant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA

---

[4] For clarity, an Action Plan based on an Exceedance shall be required if: (i) the applicable Exceedance is demonstrated for a pollutant and/or in a drainage area not addressed in a previous Action Plan in the same Reporting Year; and/or (2) when the applicable Exceedance is demonstrated for the same pollutant in the same drainage area as in a previous Action Plan in the same Reporting Year and the BMPs in the previous Action Plan were fully implemented before the applicable QSE that led to the Exceedance was sampled.

1   Waterkeeper in writing, with representative photographs, that such

2   BMP has been implemented as set forth in the Action Plan.

3   b.   Action Plan Proposed BMPs. The following BMPs should

4   generally be evaluated for inclusion in Action Plans to attain the

5   Table 1 levels in the applicable Facility's storm water discharges:

6   i.   Hydrologic Controls. Installation of additional berms or

7   equivalent structural controls necessary to reduce or prevent

8   storm water from flowing off site other than through the

9   engineered storm water conveyance system or storm water

10   retention or treatment facilities.

11   ii.   Sweeping. The increased/more frequent use of sweepers

12   and manual sweeping in otherwise inaccessible areas.

13   iii.   Treatment Systems. Installing additional components or

14   systems, or otherwise improving, an advanced storm water

15   treatment system, or making changes to the operation and

16   maintenance protocols for such system, to provide more

17   effective filtration treatment of storm water prior to

18   discharge.

19   iv.   Evaluation of Existing BMPs.  Replacing, rehabilitating, or

20   eliminating existing BMPs, including consideration of

21   covering exposed industrial materials, taking into account

22   the age of the BMPs involved or employed, the engineering

23   aspect of the application of various BMPs, and any adverse

24   environmental impact of the BMPs.

25   c.   Action Plan Review. LA Waterkeeper shall have thirty (30) days

26   upon receipt of Defendant's complete Action Plan to provide

27   Defendant with comments. If LA Waterkeeper does not provide a

28   written response within said thirty (30) day period, LA

Waterkeeper will not be allowed to provide any further comments pursuant to this provision and the Action Plan will be deemed accepted as submitted. Within twenty-one (21) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, if any, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.   Defendant shall revise the then-current SWPPP for the applicable Facility to reflect the changes required by the Action Plan, as set forth in Paragraph 29.b.i below.

e.   Action Plan Payments. Defendant shall pay Two Thousand Dollars ($2,000.00) each time an Action Plan is submitted to LA Waterkeeper that only addresses one Facility and Three Thousand Dollars ($3,000) each time an Action Plan is submitted to LA Waterkeeper that addresses both Facilities. Payments are due at the same time that the applicable Action Plan is submitted and shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

### D.    VISUAL OBSERVATIONS

25. <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facilities' operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit.

26. <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facilities. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facilities. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during Forecasted Rain Events at the Facilities to ensure that operational BMPs are being implemented, and structural BMPs are in good condition or working order. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facilities.

27. <u>Visual Observations Records</u>. Defendant shall maintain observation records, including representative photographs, to document compliance with Paragraphs 25 and 26. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of all the foregoing. Defendant shall

provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

28.    <u>Employee Training Program</u>. Within ninety (90) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at each Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

   a.    <u>Materials</u>. Training materials shall be the procedures provided in the Facilities' SWPPPs;

   b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent if the employees do not understand English. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

   c.    <u>Training Frequency</u>. Training shall be provided by a person familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facilities' SWPPPs. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPPs;

   d.    <u>Sampling Training</u>. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required

1   by this Consent Decree, including training to ensure samples are

2   properly collected, stored, and submitted to a certified laboratory;

3   e.   Visual Observation Training. Defendant shall provide training on

4   how and when to properly conduct visual observations to

5   Designated Employees;

6   f.   Non-Storm Water Discharge Training. Defendant shall train all

7   Designated Employees at the Facilities on the General Permit's

8   prohibition of non-storm water discharges, so that Designated

9   Employees know what non-storm water discharges are and how to

10  detect and prevent non-storm water discharges;

11  g.   Employees. All Designated Employees at the Facilities shall

12  participate in the Training Program annually. New Designated

13  Employees shall participate in the Training Program within ninety

14  (90) days of their hiring date; and

15  h.   Records. Defendant shall maintain training records to document

16  compliance with this Paragraph and shall provide LA Waterkeeper

17  with a copy of these records within seven (7) days of receipt of a

18  written request.

19  29.  SWPPP Revisions.

20  a.   Initial SWPPP Revisions. Defendant shall amend each of the

21  Facilities' SWPPPs to incorporate the requirements in this

22  Consent Decree and comply with the General Permit and submit

23  all of the complete, updated SWPPPs to LA Waterkeeper within

24  one hundred twenty (120) days of the Effective Date for LA

25  Waterkeeper's review and comment. The complete, updated

26  SWPPPs shall contain, at a minimum, the following elements:

27  i.   A revised pollutant source assessment, including all

28  elements required by Section X.G of the General Permit as

well as assessments of the potential for the Facilities' storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

    ii.    A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facilities as required by Section X.G of the General Permit;

    iii.    Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

    iv.    A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

    v.    A MIP as required by Sections XI and X.I of the General Permit; and

    vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.

    b.    Additional SWPPP Revisions.

    i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP for the applicable Facility to the extent necessary to reflect the changes required by the Action Plan and submit the

1    complete, updated SWPPP to LA Waterkeeper for LA

2    Waterkeeper's review and comment.

3    ii.    Within thirty (30) days after any changes in industrial

4    activities, sources of industrial pollutants, changes to

5    Discharge Points, or changes to sections of a SWPPP

6    identified in that SWPPP as requiring a SWPPP revision

7    (including but not limited to, changes in Facility contacts or

8    PPT members, changes or additions of BMPs, or changes in

9    or additions of industrial activities that impact storm water

10    discharge), Defendant shall revise the then-current SWPPP

11    for the applicable Facility to reflect such changes and

12    submit the complete, updated SWPPP to LA Waterkeeper

13    for LA Waterkeeper's review and comment.

14    c.    Review of SWPPP.  For any SWPPP updates pursuant to

15    Paragraphs 29.a and 29.b, LA Waterkeeper shall have thirty (30)

16    days upon receipt of Defendant's complete SWPPP for the

17    applicable Facility to provide Defendant with comments.  If LA

18    Waterkeeper does not provide a written response within said thirty

19    (30) day period, LA Waterkeeper will not be allowed to provide

20    any further comments pursuant to this Paragraph and the SWPPP

21    will be deemed accepted as submitted. Within thirty (30) days of

22    receiving LA Waterkeeper's comments and proposed changes to

23    the SWPPP, Defendant shall consider each of the comments and

24    proposed changes and either accept them or justify in writing why

25    a change is not incorporated. The Parties agree to work in good

26    faith to resolve any disputes with respect to the SWPPP, and any

27    remaining disputes will be resolved through timely initiation of

28    the dispute resolution procedures in Section IV below. Following

25

its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the applicable SWPPP to SMARTS.

### E.   COMPLIANCE MONITORING AND REPORTING

30.   LA Waterkeeper may conduct one annual site inspection ("Site Inspection") at each Facility during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection for the applicable Facility at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the applicable Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. If such sample is requested, Plaintiff agrees to provide the requisite containers to collect the sample. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31. <u>Document Provision</u>. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

    a.    Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents directly related to storm water quality at the Facilities that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. Notwithstanding the foregoing, for any items that are prepared directly in or submitted to SMARTS, a notification to LA Waterkeeper that the items was prepared or is available in SMARTS is sufficient.

    b.    Within seven (7) days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 57, any compliance document, inspection report, written communication and/or correspondence, or any document directly related to storm water quality at the Facilities received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

32. <u>Compliance Monitoring</u>. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Five Thousand Dollars ($5,000.00) per year, with the first annual payment to be paid within thirty (30) days of the Entry Date, and each subsequent payment to be paid on the applicable anniversary of the Effective Date. Payments under this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street, Suite 250, Los Angeles, CA

90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

      **F.**    **ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

      33.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in waters tributary to San Pedro Bay, Defendant shall make a payment totaling Forty Thousand Dollars ($40,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the Environment and sent via certified mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

      34.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant shall pay a total of Fifty-Five Thousand Dollars ($55,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group, LLP and sent via certified mail to 8 Rio Vista Ave., Oakland, California 94611. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

      35.    <u>Missed Deadlines</u>. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Plaintiff shall provide written notice to Defendant of such missed deadline. Defendant shall have seven (7) days from receipt of such notice to respond to Plaintiff, and, if necessary, cure such delinquency. If Defendant fails to respond, and if necessary, cure such alleged delinquency within seven (7) days of receipt of

Plaintiff's notice, then Defendant shall pay a stipulated payment of Five Hundred Dollars ($500). Such stipulated payment shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via certified mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36. <u>Interest On Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate of: 0.05% per month (6% per year). Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via certified mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

**IV.   DISPUTE RESOLUTION**

37. <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

38.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 37, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.     <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.     <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's

compliance at the Facilities with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

43.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

44.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

46.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

47.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

48.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written

agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.    Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.    Choice of Law. The laws of the United States shall govern this Consent Decree.

51.    Diligence. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.    Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

54.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

56. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

57. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| <u>If to Plaintiff</u>: | <u>If to Defendant</u>: |
|---|---|
| Los Angeles Waterkeeper | Cavanaugh Machine Works, Inc. |
| Barak Kamelgard | Mark Evans |
| Benjamin Harris | Secretary/Controller |
| Erina Kwon | 1540 Santa Fe Ave. |
| Madeleine Siegel | Long Beach, CA 90813 |
| 360 E 2nd St., Suite 250 | Email: mevans@cavmachine.com |
| Los Angeles, CA 90012 | Phone: (562) 437-1126 |
| Email: barak@lawaterkeeper.org | |
| Email: ben@lawaterkeeper.org | |
| Email: erina@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |

Phone: (310) 394-6162

With copies to:
Aqua Terra Aeris Law Group
Erica Maharg
8 Rio Vista Ave.
Oakland, CA 94611
Email: eam@atalawgroup.com
Phone: (510) 473-8793

With copies to:
Tracy J. Egoscue
Egoscue Law Group, Inc.
3834 Pine Ave
Long Beach CA 90807
Email: tracy@egoscuelaw.com
Phone: (562) 988-5978

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

58. If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: ____October 18____, 2024  By: _____

                Bruce Reznik
                Executive Director
                Los Angeles Waterkeeper

Dated: ____October 18____, 2024  By: _____

                Mark Evans
                Secretary/Controller
                Cavanaugh Machine Works, Inc.

APPROVED AS TO FORM

                Aqua Terra Aeris Law Group, LLP

Dated: ____October 18____, 2024  By: _____

                Erica Maharg
                Attorney for Plaintiff
                Los Angeles Waterkeeper

                Egoscue Law Group, Inc.

Dated: ____October 18____, 2024  By: _____

                Tracy J. Egoscue
                Attorney for Defendant
                Cavanaugh Machine Works, Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: December 20, 2024          CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE PATRICIA DONAHUE
United States District Court Magistrate Judge

36

CONSENT DECREE